VENUS MUSIC CORPORATION, Plain-
tiff-Appellant,

v.

MILLS MUSIC, Inc., Defendant-Appellee.

No. 38, Docket 25108.

United States Court of Appeals
Second Circuit.

Argued Oct. 22, 1958.

Decided Nov. 18, 1958.

Lewis A. Dreyer and Jack M. Ginsberg, New York City (Norma Hack, New York City, on the brief), for plaintiff-appellant.

Samuel Jesse Buzzell, New York City (Theodore R. Kupferman, New York City, on the brief), for defendant-appellee.

Before SWAN and MOORE, Circuit Judges, and KAUFMAN, District Judge.

I. R. KAUFMAN, District Judge.

This action concerns the ownership of the renewal right in the copyright on a popular song entitled "Mary Lou." Both plaintiff and defendant claim renewal rights through Abe Lyman, one of three co-authors. Defendant's claim arises under an unrecorded assignment from Lyman in 1936, plaintiff's under a 1942 assignment, duly recorded. After a trial without a jury the court below entered judgment for defendant, finding that the 1936 assignment to defendant included Lyman's renewal right and that plaintiff may not claim priority under the recording statute. Plaintiff appeals from this judgment.

"Mary Lou" was composed in 1926 by Abe Lyman, George Waggner and J. Russel Robinson and assigned by them to Henry Watterson, Inc. which thereafter registered it for copyright on April 17, 1926.

In 1931 Watterson assigned its rights, including the renewal rights, to defendant, and this assignment was duly recorded. However, there is no contention that Lyman conveyed his renewal right to Watterson in 1926, nor that Watterson was able to convey it to defendant in 1931. Thus the renewal right was still owned by Lyman when, in 1936, he executed an unrecorded bill of sale conveying all of his right, title and interest in "Mary Lou" to defendant, its executors, administrators and assigns "forever" in exchange for $200 consideration. In 1947 Lyman and his wife executed an instrument, recorded in the copyright office, conveying to defendant their rights to the renewal copyrights on "Mary Lou" and five other songs. Defendant paid $500 advance royalties on this agreement.

In the meantime, Lyman had executed in 1942 as assignment to plaintiff's predecessor in interest, Fred Fisher Music Co., Inc., conveying his right to the renewal copyright to "Mary Lou" and other songs, in return for One Dollar consideration and a promise to pay royalties. Plaintiff claims that Lyman confirmed this assignment to Fisher by an instrument executed on July 9, 1953. However, Lyman later wrote Fisher denying any knowledge of this 1953 assignment.

Relying on this court's decisions in Rossiter v. Vogel, 2 Cir., 1943, 134 F.2d 908, and Edward B. Marks Music Corp. v. Charles K. Harris Music Publishing Co., 2 Cir., 1958, 255 F.2d 518, certiorari denied 1958, 79 S.Ct. 51, plaintiff argues that we must find "as a matter of law" that Lyman's 1936 assignment to defendant did not include the renewal right. We do not believe that Rossiter and Marks compel such a holding. Both cases make it clear that general words of assignment can include renewal rights if the parties had so intended. Whether the evidence discloses such an intent is to be determined by the trier of the facts. Rossiter was an appeal from an order granting plaintiff's motion for summary judgment.

Plaintiff there relied on two assignments, one in 1910 employing general words of assignment, the other in 1926 specifically including renewal rights. In reversing the lower court's ruling, this court held that the evidence and circumstances did not support a finding that the 1910 agreement was intended to transfer renewal rights,[1] and that, at the very least, an issue of fact was presented. In Marks this court sustained the district court's determination that intent to convey renewal rights had not been proven. In neither case did this court hold that a trial court may not infer from the surrounding circumstances an intention to convey renewal rights by general words of assignment.

■ Further, in both Rossiter and Marks the assignor still held his original copyright as well as his renewal right at the time of making the conveyance in question. In the instant case, Lyman had conveyed away his copyright to Watterson in 1926 and defendant owned the copyright at the time of the 1936 assignment. It is clear, therefore, that the 1936 assignment could not possibly have been intended to convey the original copyright which had already been assigned. Under these circumstances, we cannot say that the trial court's finding that the renewal right was what was being bargained for and assigned in 1936 is "clearly erroneous." While the fact that defendant discontinued royalty payments to Lyman between 1936 and 1947 may constitute some evidence to rebut this finding, we do not believe that it is controlling here.[2]

■ Though defendant has priority in point of time, plaintiff would still prevail if it could claim the status of a bona fide purchaser for value under the recording statute (17 U.S.C.A. § 30) since the 1936 assignment to defendant was never recorded. The 1942 assignment to plaintiff was duly recorded and plaintiff had no knowledge in 1942 of defendant's assignment of 1936. However, the court below held that plaintiff had not paid value within the meaning of the recording section. We agree with this holding.

■ The court found as a fact that the one dollar consideration recited in the 1942 assignment had never been paid. Even if it had been paid, such nominal consideration would not constitute value under section 30. See Rossiter v. Vogel, 2 Cir., 1945, 148 F.2d 292, 293.

■■ Nor did plaintiff's promise to pay Lyman royalties constitute value. Rossiter v. Vogel, 2 Cir., 1943, 134 F.2d 908, 911. Recording statutes are designed to protect those who have actually made payment without notice of a prior conveyance. 4 American Law of Property § 17.10 (1952); Annotation, 1937, 109 A.L.R. 163; see also 3 Scott on Trusts § 302 (2d Ed. 1956).

"Under [the doctrine of innocent purchaser for value] relief is denied to a purchaser without notice who has not paid value, on the ground that his equity arises, not out of his mere lack of notice, but out of injury to him, through an innocent change of position to his prejudice. It is therefore denied where the matter of the payment remains executory between purchaser and seller, and there is no irrevocable change of position." La Fon v. Grimes, 5 Cir., 1936, 86 F.2d 809, 812–813, 109 A.L.R. 156.

1. "A complete transfer was obviously not intended here, for then there would have been no occasion for the supplemental agreement of 1926." 134 F.2d at page 911.

2. Nor does Lyman's 1947 assignment to defendant necessarily prove that Lyman believed that he had not conveyed his renewal rights to defendant before that date. Mrs. Lyman, who joined in that conveyance, still had her survivor's interest (17 U.S.C.A. § 24) in the renewal rights. It is fair to infer that the 1947 assignment was intended to confirm Lyman's previous assignment and to convey Mrs. Lyman's previously unconveyed interest.

■ So far as appears plaintiff's promise to pay royalties has remained executory. Plaintiff has not shown that it ever paid any royalties to Lyman.

Affirmed.